IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANDRES VACHIER,<br>ANA M. QUINTANA<br>and the conjugal partnership formed by them<br><br>Plaintiffs<br><br>vs<br><br>THE UNITED STATES OF AMERICA;<br>THE UNITED STATES DEPARTMENT OF JUSTICE;<br>THE FEDERAL BUREAU OF INVESTIGATIONS;<br>FELIX RIVERA, JANE DOE, and the conjugal partnership formed by them;<br>LUIS MOULIER, RACHEL ROE and the conjugal partnership formed by them;<br>and CARLOS BARREIRO, JANE ROE and the conjugal partnership formed by them<br><br>Defendants | CIVIL 10-1260CCC |

## OPINION AND ORDER

The remaining federal cause of action[1] in this lawsuit, filed by plaintiff Andrés Vachier,[2] a Puerto Rico police officer who was deputized by the U.S. Federal Bureau of Investigation (FBI) to be part of a Joint Puerto Rico Police Department/FBI Task Force, is a claim under the Federal Tort Claims Act (FTCA) 28 U.S.C. §2671, et seq. Plaintiff, who was assigned to the Roosevelt Roads FBI field office, in Ceiba, Puerto Rico, Complaint (¶11), alleges that

---

[1]. Plaintiff's first cause of action claimed violation of his due process rights under the Fourteenth Amendment. Such a claim would have been brought against the individual defendants under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1999). Partial Judgment was entered dismissing the individual defendants –all FBI agents– due to Vachier's failure to serve process on them, thereby mooting the Fourteenth Amendment claim.

[2]Vachier's wife and conjugal partnership have filed subsidiary claims under Puerto Rico law.

CIVIL 10-1260CCC                                                 2

in February, 2009 he became the object of personal attacks, harassment, "mobbing"[3] and humiliating treatment by defendants Supervisory Special Agent (SSA) Félix Rivera (Rivera) and Special Agent (SA) Luis Moulier (Moulier).  He avers that these FBI agents' actions caused him depression and anxiety, and other damages that are compensable under the Federal Tort Claims Act (FTCA) and Articles 1802 and 1803 of the Civil Code of Puerto Rico.

The action is now before us on defendants United States' and the FBI's Motion to Dismiss (**docket entry 14**).  It is their contention that dismissal is warranted under F.R.Cv.P. 12(b)(1) because, pursuant to one of the exceptions set out in the FTCA, the Court lacks subject matter jurisdiction to entertain this action.  Plaintiff opposed the motion (docket entry 18) and the government replied. (docket entry 21).

Pleading Standards for Subject Matter Jurisdiction

Fed.R.Cv.P. 12(b)(1) allows a defendant to raise the defense that a court lacks subject matter jurisdiction to entertain a claim.  Federal Courts are not at liberty to overlook limitations on their subject matter jurisdiction. Francis v. Goodman, 81 F.3d. 5, 8 (1996).  If the court determines that as a threshold matter subject matter jurisdiction does not exist, it must dismiss the case and not make any determination on the matter. Menéndez v. United States, 67 F. Supp. 2d 42, 45 (D. Puerto Rico 1999).  Plaintiff bears the ultimate burden of proving that subject matter jurisdiction exists. Aversa v. United States, 99 F.3d. 1200, 1209 (1996).

---

[3]Dictionary com's definitions for "mob" and "mobbing" in all their parts–noun, adjective, and verb, as could be related to the allegations of this action, in terms such as "a disorderly or riotous crowd of people;" "of, pertaining to, or characteristic of a lawless, irrational, disorderly, or riotous crowd;" and "to crowd around noisily, as from curiosity or hostility."  There are no factual allegations in Vachier's complaint that would encompass this term.

CIVIL 10-1260CCC                                    3

Vachier's Factual Allegations

Vachier's complaint describes a series of incidents[4] occurring from February, 2009 through his voluntary departure from the Task Force three months later in May, 2009, that serve as the basis for his alleged cause of action:

¶ 11 - Plaintiff Andrés Vachier is a Police Officer who works for the Puerto Rico Police Department. On or before December 2002 Andrés Vachier was assigned to work in a joint Puerto Rico Police Department/FBI Task Force, assigned to the Roosevelt Roads FBI field office in Ceiba, Puerto Rico. Plaintiff was deputized as a Task Force Agent. Plaintiff received a monthly salary differential of $1,300.00 paid by the Federal Government while he worked as a TFA. Plaintiff also had an official vehicle assigned to execute his duties as a TFA.

¶13 – On or before February 28, 2009, plaintiff took three women Strike Force[5] members to the Naguabo, Puerto Rico FBI office to interview several persons in relation to a case under investigation. Afterward, the four of them went to lunch. Upon plaintiff's return to the office, SA Moulier told him, in an aggressive manner and high tone of voice, never to take Strike Force personnel from the office, on SSA Rivera's instructions. He also told plaintiff "that he was becoming 'dumb' and had 1,300 reasons to shape up."

¶14 – In February, 2009, upon returning to the office after an official action in which Vachier had ordered his unit to inspect a vacant apartment, in a public housing project, "Moulier in a high tone of voice and in a harsh manner, called Plaintiff and accused him of

---

[4] We have excluded an April 8, 2009 incident, p.7-8, ¶21, in which Vachier alleges he observed evidence that alcoholic beverages had been consumed by local police officers and FBI employees in a hotel room being used by the security detail for a government witness under protection. Plaintiff does not allege a role in the incident nor it having had any specific repercussion upon him.

[5] Vachier uses the terms "Task Force" and "Strike Force" without any distinction. We therefore assume them to be one and the same.

CIVIL 10-1260CCC                                              4

having executed an illegal search of an apartment.  In the same humiliating manner [a]nd in front of the whole squad with which Plaintiff had been working, SA Moulier accused the Strike Force of having stolen $500.00 from the empty apartment.  SA Moulier on repeated occasions indicated that Plaintiff was becoming 'dumb' and that he was doing a bad job."

¶15 – On March 2, 2009, while plaintiff disseminated information to other Strike Force members related to the Commander's order prohibiting catching crabs within Roosevelt Roads, he made a remark "about an incident involving SA Moulier during a crab catching expedition."  That same day he was called into SSA Rivera's office where "Moulier screamed at Plaintiff that he had stained the image of the FBI and that he was doing everything wrong," and that "Plaintiff needed to learn to shut his mouth, that he had one thousand and three hundred reasons to keep quiet and that Plaintiff would be removed from the strike force assignment he had at the time," and that he should "invent some reason why he was no longer in the strike force to tell other team mates."

¶¶16-19 – While screening Puerto Rico police officers for potential assignment with the Strike Force, Vachier identified police officer Eddie Lozano as a candidate.  Plaintiff avers that Lozano informed him that he had been wrongfully arrested a decade earlier, that he in turn informed SSA Rivera of the arrest issue to which (sic) he was directed to include Lozano as a Strike Force."  (¶16)

On April 7, 2009, while returning from executing job-related duties at the Counter Drug Unit in Humacao, plaintiff observed a crime in progress in Ceiba, and alerted the Puerto Rico Police Department, whose officers arrested the perpetrators.  He was scheduled to appear before the local District Attorney to process the case.  While executing those functions, he received a call from SSA Rivera to return to the office.  (¶17 ) When plaintiff returned to the office, as ordered, SSA Rivera, in front of SA Moulier and SA Barreiro, "in a high tone of voice, using slang terms and insults, brought the situation of Strike Force Lozano's arrest."  "He questioned plaintiff because Lozano had been arrested and could not be deputized for

CIVIL 10-1260CCC                                         5

federal services." Plaintiff avers that he "reminded SSA Rivera that he had previously informed him of the situation and that no charges were filed against Lozano because it had been a wrongful arrest." "SA Moulier exploded and kept indicating that Plaintiff was doing a poor job and that he was becoming 'dumb.' SSA Rivera also called into question Plaintiff's involvement in the investigation of the Ceiba arrests and told Plaintiff that he shouldn't be wasting FBI time on such things." (¶18)

"At the end of the meeting SSA Rivera told Plaintiff that he would not be allowed to use the official vehicle for the next two months. At a later date, on April 14, 2009 SSA Rivera once again called Plaintiff to his office and clarified that the official vehicle removal was caused by the issue with Agent Lozano and was not related to the Ceiba case. (¶19)

¶20 – "Through knowledge and/or belief" SSA Rivera, SA Moulier and defendant SA Carlos Barriero "instigated, perpetrated and allowed" the placing on his desk on April 13, 2009, of a black figurine with an erect penis, with an attached note which read, "*welcome to Fajardo.*"

¶¶23-24 – On May 14, 2009, Plaintiff requested to withdraw from service with the FBI. He avers that, although it is customary for TFAs who leave federal service to turn in their security equipment and to clean up their desks, on May 15, 2009 he was contacted by TFAs from SSA Rivera's office who wanted to come to his house to get the equipment, which he refused. Vachier alleges that when he returned his equipment on May 21, 2009, personal items and documents in the desk that he had occupied had been removed and stored in a box. Someone else was already occupying his desk, even though there were other available desks in the work area.

ANALYSIS

The government contends that "the Court lacks subject matter jurisdiction since 28 U.S.C. §2689(h) of the FTCA bars claims for defamation through its exclusion of claims

CIVIL 10-1260CCC                              6

arising out of libel and slander." Id.   The complaint is dismissed for reasons other than those raised by the United States.

Section 1346(b)(1) of the FTCA provides that the United States shall be liable for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Barros-Villahermosa v. United States, 2007 WL 4149805 *4 (D. Puerto Rico 2007).  That is, the United States has waived its sovereign immunity and consented, through the FTCA, to be sued for damages for personal injury caused by the negligent or wrongful act or omission of a federal employee while acting within the scope of his employment, if under the same circumstances a private employer would be liable for the acts of its employee under local law. Díaz-Romero v. Mukasey, 514 F.3d. 115, 119 (1st Cir. 2008).

Additionally, the FTCA is the exclusive remedy for the tortious acts of federal employees, despite any statutory authority of an agency to sue or be sued in its own name, and even when an exception to the FTCA precludes government liability.  28 U.S.C. §2679(a). Barros-Villahermosa, supra, at*4. See also, Román v. Townsend, 224 F.3d. 24, 27 (1st Cir. 2000).  (The  FTCA provides the exclusive remedy to compensate for a federal employee's tortious acts committed within the scope of his or her employment.)We also note that the United States is the only proper party defendant under the FTCA,[6] and federal courts lack subject matter jurisdiction as to purported FTCA claims brought against federal agencies

---

[6]The Westfall Act, enacted in 1988 confers immunity on federal employees by making an  FTCA action against the Government the exclusive remedy for torts committed by Government employees within the scope of their employment. Aversa, supra, at 1207; Myvett v. Williams, 638 F. Supp. 2d 59, 64 (D.D.C. 2009).  Therefore, Vachier has no cause of action under Pureto Rico Civil Code Articles 1802 or 1803.

CIVIL 10-1260CCC                              7

or their employees, <u>Barros-Villahermosa</u>, supra, at *3.  For that reason, the claims against the Department of Justice and the FBI must be dismissed.

This waiver of sovereign immunity, however, is subject to several exceptions set forth in 28 U.S.C. §2680.  If a tort claim falls within one of these exceptions, the district court lacks jurisdiction. <u>Montijo Reyes v. United States</u>, 436 F.3d. 19, 24 (1st Cir. 2006).  Excluded from this waiver, among other things, is

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or **based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.**

28 U.S.C. §2680(a).  (Our emphasis).

**Discretionary Function**

Uniformly, the federal courts have found that under the FTCA employer decisions such as hiring, **discipline** and termination of employees are within the discretionary function exception.  <u>Crete v. City of Lowell</u>, 418 F.3d. 54, 64 (2005); <u>see</u>, <u>also</u>, <u>Vickers v. United States</u>, 228 F.3d. 944, 950-51 (9th Cir. 2000).

> The discretionary function exemption under the FTCA bars claims "based upon the performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved by abused.

28 U.S.C. §2860(a), <u>Crete</u>, <u>supra</u>, at 64 n.14.

In determining whether conduct involves a discretionary function, we first ask whether the conduct itself is discretionary.  <u>Abreu v. United States</u>, 468 F.3d. 20, 25 (1st Cir. 2006).  To be discretionary, the conduct must involve an element of judgment or choice.  <u>Id</u>.  The discretionary function exception covers only acts that are discretionary in nature and does not apply in cases where a federal statute, regulation or policy specifically prescribes the

CIVIL 10-1260CCC					8

course of action that the federal employee must follow. United States v. Gaubert, 499 U.S. 315, 322(1991), Barros-Villahermosa, supra, at *5.

Where no specific action is required within a category of conduct and the government actors in question have latitude to make decisions and choose among alternative courses of action, the conduct is discretionary. Bolduc v. United States, 402 F.3d. 50,61 (1st Cir. 2005).

> In determining whether a particular government function falls within the scope of official immunity, the proper approach is to consider the precise function at issue, and to determine whether an officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct.

Araujo v. Welch, 742 F.2d 802, 805 (3rd Cir. 1984). In determining immunity, courts have taken a "functional approach" to determine whether the torts occurred within the outer perimeter of the official's authority. Id. We must therefore examine plaintiff's allegations, separating concrete facts from conclusory characterizations, and keeping in mind the methodology to determine whether defendants acted within the outer perimeter of their authority in performing discretional functions.

Vachier, as a Puerto Rico police officer deputized to work with the FBI in a joint Task Force, received a monthly salary differential paid for by the federal government.

Plaintiff identifies the federal employees FBI SSA Rivera and SA Moulier as having harassed and humiliated him through their actions, which he euphemistically refers to as "interventions." He takes issue with SA Moulier's allegedly aggressive or harsh manner and high tone of voice, and the fact that his TFA supervisor was not called or present at these times, "in violation of FBI and PRPD procedures and regulations." A review of the allegations reflects that the events[7] were actually incidents in which plaintiff was criticized, reprimanded

---

[7]We have excluded the incident in which a figurine was left on Vachier's desk. This incident is based on "knowledge and belief," but plaintiff gives no concrete facts that would

CIVIL 10-1260CCC                                              9

and/or disciplined for his actions taken during or in the course of his employment as a deputized FBI Task Force agent assigned to the FBI office at Roosevelt Roads, Ceiba, Puerto Rico, to wit:

     1) He was reprimanded by SA Moulier, "on SSA Rivera's instructions," for taking three Strike Force agents to lunch after conducting interviews at the FBI Office in Naguabo."[8]

     2) He was reprimanded by SA Moulier for allegedly conducting an illegal search of an empty apartment. In the same manner SA Moulier accused the Strike Force of having stolen $500.00 from that apartment.

     3) He was reprimanded by SA Moulier for having related to other Strike Force personnel an earlier incident involving SA Moulier during a crab catching expedition, an activity recently prohibited by the Post Commander in an order that Vachier had just notified to them, thereby allegedly staining the image of the FBI.

     4) He was reprimanded by SSA Rivera and SA Moulier for recommending Eddie Lozano as a candidate for the Strike Force, notwithstanding that Lozano's wrongful arrest a decade earlier made him ineligible to be deputized for federal service. He was disciplined for this incident with the loss of the use of his official vehicle for two months.

     5) He was reprimanded by SSA Rivera for "wasting FBI time" by his involvement in the local criminal investigation.

     6) During a conversation with SA Moulier at Roosevelt Roads, but away from the FBI office, SA Moulier accused plaintiff of having an attitude problem.

     Vachier was also upset by the fact that, after he withdrew from the Task Force, instead of allowing him to return his equipment to the office and clean out his desk and

---

support such knowledge, making Vachier's statement mere speculation that Rivera, Moulier and Barriero "instigated, perpetrated and allowed" the incident to occur.

    [8] It is unclear whether the trip prevented him from doing his own FBI-related work, whether there were any ramifications in not specifically having SA Moulier's previous authorization, or whether the lunch break simply lasted too long.

CIVIL 10-1260CCC                              10

removing his belongings, he was contacted by an agent from SSA Rivera's office who requested to pick up the equipment at plaintiff's home, and, when Vachier returned the equipment to the office, he found that his personal items and documents from his desk had already been removed and stored in a box.

The reprimands, for the most part, reflect displeasure and disapproval by supervising FBI agent Rivera and Special Agent Moulier of actions taken by Vachier during the course of his Task Force employment, such as the search of a vacant apartment and Lozada's recommendation as a Task Force member, as well as the lunch with female Strike Force members, getting involved in a local criminal investigation, and embarrassing the FBI by narrating the crab-catching incident to the Strike Force.

With regard to the alleged reprimands resulting from the agents' perception of plaintiff's actions and behavior as improper and in need of correction, courts have found that, in discussing work-related matters:

> [C]ase law has carved out an exception wherein even those federal officials who commit common-law torts are immune from liability where the acts they committed fall within the outer perimeter of said officials' line of duty. [G]overment officials must be able to speak freely to their employees without apprehension that the motives that control his official conduct may, at any time, become the subject of inquiry in a civil suit for damages. Oral communication about work-related matters advances legitimate objectives of the office."

Andrejko v. Sanders, 638 F. Supp. 449, 452 (M.D. Pa. 1986), quoting Araujo v. Welch, 742 F.2d 802, 806 (3rd Cir. 1984).

Andrejko brought claims of intentional infliction of emotional distress under FTCA allegedly inflicted by his supervisor. The Court concluded that mere verbal abuse which was inflicted upon him by his supervisor in the course of his employment did not under Araujo or Barr v. Matteo, constitute actionable behavior by the defendant and, hence the United States. It was specifically noted that: " . . . where an official performs a discretionary act

CIVIL 10-1260CCC                                     11

within the perimeter of his official duties he is entitled to absolute immunity against claims of intentional infliction of emotional distress . . . " and that, ". . . absent physical abuse, . . . a federal employee may not maintain a suit against a superior who has exercised the considerable discretion he enjoys to determine what mode of communication will best motivate an employee to reach the production levels set by the agency." Id., at p. 453.

Finally, in Richman v. Straley, 48 F.3d 1139 (10th Cir. 1995), the Court concluded that "[d]ecisions regarding employment and termination are inherently discretionary" and that "[s]uch sensitive decisions are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing."  48 F.3d 1139.

We find that plaintiff's descriptions of these incidents fit squarely within the individual defendants' discretionary functions and, therefore, fall within the FTCA exception. In sum, the United States has not waived its sovereign immunity from liability for Vachier's claims.

For the above-stated reasons, we find that this Court lack subject matter jurisdiction plaintiff has failed to state a claim. Accordingly, the defendants' Motion to Dismiss (**docket entry 14**) pursuant to Fed.R.Cv.P. 12(b)(1) is GRANTED, and this action is DISMISSED.

SO ORDERED.

At San Juan, Puerto Rico, on April 15, 2011.

                                        S/CARMEN CONSUELO CEREZO
                                         United States District Judge